**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ATLANTIC SPECIALTY INSURANCE
COMPANY a/s/o TAU TECHNOLOGIES, LLC,

      Plaintiff,

v.                                    Case No.: 1:25-cv-486 SCY/JMR

THE UNITED STATES OF AMERICA,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

After an overflowing toilet in a space leased by the Federal Aviation Administration ("FAA") caused water damage to the unit below, Plaintiff Atlantic Specialty Insurance Company a/s/o Tau Technologies, LLC ("Atlantic") filed this lawsuit. Defendant United States of America filed a Motion to Dismiss, alleging this Court lacks subject matter jurisdiction because Atlantic failed to exhaust its administrative remedies under the Federal Tort Claims Act ("FTCA"). Doc. 16. In the first count of its complaint, Atlantic asserts several claims for negligence. In the second count, Atlantic asserts a claim for trespass.

Regarding the first count, the Court concludes that Atlantic's Subrogation Letter provided the United States with adequate notice of its claim that the FAA negligently failed to operate, maintain, and/or repair the toilet. The Subrogation Letter did not, however, place the FAA on notice of Atlantic's other negligence theories: (1) failure to retain contractors who would properly install, maintain, and/or repair the toilet; and (2) failure to properly train, supervise, and/or manage contractors, subcontractors, agents, servants, and employees in the proper use and operation of the toilet. Regarding the second count of Atlantic's complaint, the Subrogation Letter sufficiently notified the FAA of Atlantic's trespass claim. Thus, the Court concludes that

Atlantic exhausted most, but not all, of its administrative remedies. Because the Court lacks jurisdiction over Atlantic's unexhausted claims, the Court dismisses those claims.

<strong>BACKGROUND</strong>[1]

This case arises from an overflowing toilet and the water damage that followed. Doc. 8 at 3, ¶¶ 10-12. The offending toilet was located in a space leased by the FAA, directly above the unit leased by Tau Technologies ("Tau"). *Id.* at 2, ¶¶ 6, 8-9. Water from the overflowing toilet caused over one hundred thousand dollars in damage to equipment in Tau's facility. *Id.* at 3, ¶ 13; Doc. 16 at 1, Undisputed Material Facts ("UMF") ¶ 1; Doc. 18 at 1-2. Tau subrogated its potential claims in connection with this incident to its insurer, Atlantic. Doc. 8 at 3, ¶ 12.

On May 23, 2024, Atlantic sent the FAA a Subrogation Letter. Doc. 16 at 2, UMF ¶ 3; Doc. 18 at 2; Doc. 19-1. The Subrogation Letter explained that Atlantic insured Tau, which leased property located at 1601 Randolph Road SE, Albuquerque, New Mexico 87106, and that the FAA leased the space directly above Tau. Doc. 19-1 at 2. According to the Subrogation Letter, Tau observed water dripping from the ceiling of its facility on June 1, 2023.[2] *Id.* Tau immediately went upstairs to notify the FAA. *Id.* Tau and FAA personnel then searched for the source of the leak and discovered that the handle to a toilet in the FAA leased space was stuck in

---

[1] The United States and Atlantic have submitted documents with their briefing that are a part of the underlying subrogation demand. Neither party objects to the Court's consideration of these documents, and neither question any of the documents' authenticity. As discussed further below, the Court agrees that under Rule 12(c) or 12(b)(1), it may consider these records. Consequently, the Court will not convert the United States' motion to dismiss into one for summary judgment. The following facts are those set forth in the complaint, as well as those referred to in and attached to the parties' briefing. *See generally Montoya v. N.M. Dep't of Workforce Sols.*, No. 14-cv-00360-JCH/SCY, 2015 WL 13662861 (D.N.M. July 1, 2015) (providing same).

[2] The Subrogation Letter alleges that Tau observed water dripping from the ceiling on June 1, 2023. Doc. 19-1 at 2. Atlantic's complaint alleges the water overflow happened on June 8, 2023. Doc. 8 at 2, ¶ 10. The one-week difference in date is immaterial to the present motion.

the open position. *Id*. By that time, several inches of water had accumulated in the FAA's leased space, and water continued leaking into Tau's facility for several hours. *Id*. The Subrogation Letter stated that Tau submitted an insurance claim related to the loss and that Atlantic indemnified Tau in the amount of $152,593.63. *Id*. at 3. Atlantic demanded reimbursement from the FAA in that same amount. *Id*. Atlantic enclosed with the Subrogation Letter several photographs of Tau's damaged equipment, a summary of Tau's calculated losses, records concerning lost revenues, bi-weekly revenues and billable hours, monthly profit-and-loss statements, payroll analyses, and internal cleanup labor schedules prepared by MDD Forensic Accountants. *Id*. at 4-6, 24-68. Atlantic also included photographs of the toilet, the inside of the toilet tank, water damage to the molding, and the door to the FAA's leased unit. *Id*. at 7-12.

Atlantic filed the complaint in this action on May 22, 2025. Doc. 1. The FAA denied Atlantic's claim on June 4, 2025. Doc. 16, Ex. A-2. The United States filed the present motion to dismiss on January 7, 2026. Doc. 16; *see also* Docs. 18 & 19 (response and errata); Doc. 20 (reply).

## APPLICABLE LAW

### 1. Motion for Judgment on the Pleadings

After filing an answer, the United States filed the present motion as a Rule 12(c) motion for judgment on the pleadings. Doc. 16 at 1. Rule 12(c) motions for judgment on the pleadings are traditionally reviewed under the Rule 12(b)(6) standard. *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992). Parties, however, may file Rule 12(c) motions for various reasons, and the legal standard the court applies may depend on the purpose of the motion and issues the motion raises. *See Swepi, LP v. Mora Cty., N.M.*, 81 F.Supp.3d 1075, 1146 (D.N.M. 2015); *see also* 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*

§ 1367 (3d ed.) (noting Rule 12(c) can serve as an "auxiliary or supplementary" device). For example, courts have applied the Rule 12(b)(1) standard to resolve Rule 12(c) motions that challenge the court's subject matter jurisdiction. *E.g.*, *Doherty v. Bice*, 101 F.4th 169 (2d Cir. 2024); *Perelman v. Perelman*, 919 F.Supp.2d 512 (E.D. Pa. 2013), aff'd, 793 F.3d 368 (3d Cir. 2015); *Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*, 439 F.Supp.2d 1171 (W.D. Okla. 2006); *but see Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138 (10th Cir. 2000) (where subject matter jurisdiction is not challenged, Rule 12(c) motion was treated under the 12(b)(6) standard). Because, as explained more fully below, the present motion challenges the Court's subject matter jurisdiction, the Court will apply the Rule 12(b)(1) standard to the present motion.

### 2. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction may either (1) facially attack the sufficiency of the complaint's allegations as to subject matter jurisdiction or (2) challenge the facts upon which the subject matter jurisdiction is based. *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). When a motion challenges the factual basis for an action, the court has wide discretion to consider documents, affidavits, and hold limited evidentiary hearings to resolve disputed jurisdiction facts under Rule 12(b)(1). *Holt v. United States*, 46 F.3d 1000, 1002-1003 (10th Cir. 1995). The court may not presume the truthfulness of the complaint's factual allegations. *Id.* at 1003.

References to evidence outside the pleadings do not convert a Rule 12(b)(1) motion into a Rule 56 motion for summary judgment unless the resolution of a jurisdictional question is intertwined with the merits of the case. *Id.* The two are intertwined if "the resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle v. U.S.*,

208 F.3d 1220, 1223 (10th Cir. 2000) (citations omitted). Dismissals for lack of subject matter jurisdiction are not an adjudication of the merits and are therefore without prejudice. *Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016).

### 3. Federal Tort Claims Act ("FTCA")

    a.  Jurisdiction and Administrative Exhaustion

The FTCA grants federal district courts jurisdiction over certain claims against the United States where it has waived its sovereign immunity. 28 U.S.C. § 1346(b); *FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (quotations omitted). As a guiding principle, waivers of sovereign immunity are strictly construed in favor of the sovereign. *Ohlsen v. United States*, 998 F.3d 1143, 1154 (10th Cir. 2021) (quoting *Sossamon v. Texas*, 563 U.S. 277, 292 (2011)); *but see Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852-53 (10th Cir. 2005) (adopting the First Circuit's pragmatism for administrative claim's notice requirements).

A claimant may not file suit in federal district court unless they first exhaust their administrative remedies. 28 U.S.C. § 2675(a); *McNeil v. U.S.*, 508 U.S. 106, 113 (1993). This administrative exhaustion requirement is jurisdictional and cannot be waived. *Rowland v. Matevousian*, 121 F.4th 1237, 1246-47 (10th Cir. 2024).[3] The purpose of this exhaustion

---

[3] In addressing the issue of jurisdiction in an FTCA case, the Honorable William P. Johnson recently wrote,

> This Court need not decide whether the Supreme Court's decision in Santos-*Zacaria v. Garland*, 598 U.S. 411, 143 S.Ct. 1103, 215 L.Ed.2d 375 (2023) undermines Tenth Circuit precedent classifying the FTCA's exhaustion requirement as jurisdictional. *See Rapid Enters., LLC v. U.S. Postal Serv.*, 2025 WL 1644543, at \*4, 2025 U.S. App. LEXIS 14189, at \*8–9 (10th Cir. June 10, 2025) (Kelly, J.) (declining to "weigh in on" that issue). Instead, this Court cites to binding circuit precedent. *See Rowland v. Matevousian*, 121 F.4th 1237, 1246–47 (10th Cir. 2024) (noting the "FTCA's exhaustion requirement is a 'jurisdictional' matter").

requirement is to provide the agency a chance to investigate and settle claims prior to involving the court system. *McNeil*, 508 U.S. at 111-12; *see also* S. Rep. No. 89-1327, at 2 (1966) (providing authorization to agencies to settle tort claims to reduce congestion in courts). Where a claimant does not provide an agency notice, and therefore an opportunity to investigate and settle, the United States does not waive its sovereign immunity. *See Rowland*, 121 F.4th at 1246-47 (noting the "FTCA's exhaustion requirement is a 'jurisdictional' matter").

    b.  <u>Sufficiency of Notice</u>

A claim is properly presented when the agency receives a written notification of the incident sufficient to permit investigation, together with a claim for money damages in a sum certain. 28 C.F.R. § 14.2(a). The Tenth Circuit applies a pragmatic test to determine whether an administrative claim's language provides sufficient notice under the FTCA. *Staggs v. United States ex rel. Dept. of Health & Human Servs.*, 425 F.3d 881, 884 (10th Cir. 2005); *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 852-83 (10th Cir. 2005). That test asks "whether the claim's language serves due notice that the agency should investigate the possibility of particular (potentially tortious) conduct." *Staggs*, 425 F.3d at 884 (citation and internal quotation marks omitted). Therefore, the claim covers any potential causes of action fairly suggested by the facts. *Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016).

### DISCUSSION

The United States argues that Atlantic failed to provide the FAA with sufficient notice of the June 1, 2023, incident to allow the agency to investigate Atlantic's eventual negligence and

---

 *Est. of Burns through Talley v. Raymond G. Murphy Veterans' Affs. Med. Ctr.*, No. 1:24-CV-00860-WJ/GBW, 2025 WL 2423489, at *2 (D.N.M. Aug. 21, 2025)." Similarly, given Tenth Circuit precedent, the Court does not now opine on the impact of *Santos*.

trespass claims.[4] According to the United States, this insufficient notice constitutes a failure to exhaust administrative remedies that deprives the Court of subject matter jurisdiction over Atlantic's claims. Atlantic disagrees, arguing that its Subrogation Letter sufficiently placed the United States on notice of Atlantic's claims.

Although the parties agree that the Tenth Circuit's notice requirement is "pragmatic" and that an administrative claim is properly presented when it provides the agency with enough information to place it on notice to "investigate the possibility of particular (potentially tortious) conduct," *Staggs*, 425 F.3d at 884, they disagree about what level of detail is required to satisfy that standard. The United States argues that because Atlantic did not identify specific negligent conduct by the FAA, it cannot be held liable under the FTCA for any of Atlantic's eventual claims. Docs. 16 at 10, 20 at 1. In other words, the United States argues that Atlantic failed to put the FAA on notice that it was culpable for any negligent conduct at all. *See* Doc. 20 at 3. Atlantic responds that the Subrogation Letter contained sufficiently specific facts to place the FAA on notice of its negligence and trespass claims, as demonstrated by the fact that, after receiving Atlantic's letter, the FAA did investigate Atlantic's claims.

Atlantic's operative complaint contains two counts. *See* Doc. 8. In Count I, Atlantic alleges the United States negligently failed to: (1) properly operate, maintain, and/or repair the toilet;[5] (2) retain contractors who would properly install, maintain, and/or repair the toilet; and

---

[4] The United States does not dispute that Atlantic provided a claim for money damages in a sum certain and Atlantic clearly "seeks payment from the FAA in the amount of $152,593.63" in its Subrogation Letter. Doc. 19-1; *see* 28 U.S.C. § 2675(a) (requiring presentation of claim to appropriate federal agency); 28 C.F.R. § 14.2(a) (mandating that presentation of claim include both money damages and notice of incident).

[5] Because Atlantic's allegations in paragraphs 21(a)—failure to properly operate, maintain, and/or repair—and 21(d)—failure to use due care in properly operating, maintain, and/or repairing—are so similar, the Court treats those allegations as one claim. Doc. 8 at 4, ¶ 21.

(3) properly train, supervise, and/or manage contractors, subcontractors, agents, servants, and employees in the proper use and operation of the toilet. *Id*. at 4, ¶ 21(a)-(c). In Count II, Atlantic asserts a claim for trespass. *Id*. at 5-6, ¶¶ 27–31. Before addressing the United States' exhaustion arguments, the Court pauses to consider whether Atlantic's three theories of negligence, contained under Count I of its amended complaint, constitute three separate "claims" for purposes of the FTCA. Based on *Lopez v. United States*, 823 F.3d 970 (10th Cir. 2016), the Court concludes that they do.

The plaintiff in *Lopez* sued a doctor and surgical resident for medical malpractice performed at the Veterans Administration Hospital. *Id.* at 971. During discovery, the plaintiff obtained information that the hospital might have been negligent in credentialing the doctor accused of malpractice. *Id.* at 973. The plaintiff moved to amend his complaint to add, in a separate count, a claim for negligent privileging and credentialing. *Id*.

In proceedings at the district court level, the trial judge concluded that because the plaintiff did not learn facts supporting a negligent credentialing claim until after he conducted discovery, the negligent credentialing claim did not constitute a new claim. *Id.* at 975. On appeal, the United States argued the district court erred when it rejected the United States' position that the plaintiff had failed to exhaust his administrative claim for negligent privileging and credentialing. *Id*. The Tenth Circuit agreed with the United States. *Id.* In reversing the district court, the Tenth Circuit considered the meaning of the term "claim" as it applies to the Federal Tort Claims Act.

The Tenth Circuit explained:

> [W]e have effectively construed the term "claim," as employed in § 2675, as encompassing two requirements: (1) a written statement describing the injury in sufficient detail to allow the agency to begin an investigation into the possibility of potentially tortious conduct, and (2) a request for a sum certain in damages.

> That pragmatic interpretation is consistent with Form SF95, the form typically used for filing administrative claims. As the Seventh Circuit noted long ago, "no statement of legal theories is required" by Form SF95, "only facts plus a demand for money."

*Id.* at 976. Thus, when considering whether the plaintiff exhausted its administrative claim, the Court does not look to whether the plaintiff notified the FAA about its potential legal theories. Instead, the Court directs its focus to the facts alleged and then determines whether those factual allegations sufficiently placed the FAA on notice of the potentially tortious conduct at issue in the lawsuit. Here, Atlantic brings three separate negligence claims in the first count of its operative complaint. The Court addresses each in turn.

1. **Count 1: Atlantic's Negligence Claims**

   a. <u>The Court will not dismiss Atlantic's claim for negligent failure to operate, maintain, and/or repair as Atlantic's Subrogation Letter sufficiently put the FAA on notice of that claim</u>**.**

Atlantic's notice of claim, or Subrogation Letter, provided sufficient facts and circumstances to place the FAA on notice of the potentially tortious conduct of negligently failing to operate, maintain, and/or repair the overflowing toilet. Under the FTCA, written notice must provide enough information for the agency to investigate the possibility of particular tortious conduct fairly suggested by the facts presented. *Staggs*, 425 F.3d at 884; *Trentadue*, 397 F.3d at 852-53; *Lopez*, 823 F.3d at 976. "In other words, the notice must describe 'the facts and circumstances underlying a claim'—'rather than the exact grounds'—'upon which [the] plaintiff seeks to hold the government liable.'" *Benally v. United States*, 735 F. App'x 480, 485 (10th Cir.

2018) (quoting *Trentadue*, 397 F.3d at 853).[6] Courts should therefore "liberally construe the universe of facts that the FTCA claimant provides." *Id*.

Here, Atlantic's Subrogation Letter supplied critical details, including the date, address, location, and description of the incident involving a specific FAA toilet. *See* Doc. 19-1. The Subrogation Letter stated:

> On June 1, 2023, [Tau Technologies] noted water dripping from the ceiling of the Leased Premises. [Tau] immediately went upstairs to notify the FAA, the tenant above the Leased Premises. Upon looking for the source of the water leak, the FAA and [Tau] discovered that a handle to the [toilet] in a restroom was stuck in the open position. At that time, the FAA had a few inches of water in its leased facility and the water continued to intrude down into [Tau]'s Leased Premises for several hours.
>
> As a result of the water intrusion, [Tau]'s equipment located on its central work bench, below the origin of the leak, was damaged. [Tau] submitted an insured claim to [Atlantic] related to this loss and [Atlantic] indemnified [Tau] in the amount of $152,593.63.
>
> [Atlantic] now seeks payment from the FAA in the amount of $152,593.63 for payments made to [Tau] in connection with the above-described loss . . . .

*Id*. at 2-3.

Liberally construed, these facts reasonably suggest that an FAA employee may have negligently left the toilet handle stuck in an open position[7] and/or failed to notice several inches of standing water accumulating in the FAA's facility for hours. *See Benally*, 735 F. App'x at 485 (encouraging the courts to liberally construe facts provided by the claimant). These facts are sufficient to place the FAA on notice that it should investigate whether negligent operation,

---

[6] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

[7] Although the amended complaint alleges the handle was stuck in the down position, Doc. 8 at 4, ¶ 10, because the Court is reviewing the sufficiency of the Subrogation Letter, which alleges it was stuck in the open position, the Court will use the allegation that the handle was stuck in the open position.

maintenance, or repair of the toilet caused the property damage alleged in Count I, paragraphs 21(a) and (d) of the operative complaint. *See Trentadue*, 397 F.3d at 852-53 ("[T]he FTCA's notice requirements should not be interpreted inflexibly."); *see also Rooney v. United States*, 634 F.2d 1238, 1242–43 (9th Cir. 1980) (holding that the claimant does not need to identify a specific negligent federal employee or expressly allege negligence in an administrative claim to the agency).

The United States argues that the claim was deficient because the Subrogation Letter did not expressly state that the FAA or one of its employees caused the overflow. Doc. 16 at 10-13. Specifically, the United States contends that Atlantic "merely stated that it suffered injuries due to an overflowing toilet and failed to state facts that would suggest that the FAA was at fault for the toilet overflowing." *Id*. at 13. In support, the United States relies heavily on *Stevens*, where Judge Johnson held that a claimant failed to exhaust administrative remedies after providing only a "mere description of the incident." *Id*. at 12; *Stevens v. United States*, No. 17-CV-688-WPJ-SCY, 2019 WL 1386732, at *4 (D.N.M. Mar. 27, 2019). *Stevens*, however, is distinguishable.

In *Stevens*, the claimant submitted two SF-95 forms, or notices of claims, to the Postal Service. *Id*. at *1. The second—more detailed—form stated only that the claimant was injured when an automatic door at a postal facility closed on him as he exited the building, causing him to fall onto the concrete. *Id*. The subsequent lawsuit alleged the Postal Service failed to make reasonable inspections, keep the premises safe, and failed to warn, though the administrative claim itself did not suggest any negligent conduct by the Postal Service or identify facts implying the agency failed to maintain or inspect the door. *Id.* at *3-4. As the Court explained, the claimant "did not state or imply that the . . . Postal Service was negligent, much less negligent in failing to warn him of the alleged dangerous condition or that the . . . Postal Service failed to

maintain or inspect the door." *Id*. at *4. Therefore, Judge Johnson determined that the claimant did not exhaust his administrative claim. *Id.*

Atlantic's claim for negligent operation, maintenance, or repair of the toilet is materially different. Unlike the sparse allegations in *Stevens*, Atlantic's Subrogation Letter included allegations of a specific defect: the toilet handle was left in an open position. Anyone familiar with a toilet, and all of us are, knows that a handle left in an open position will cause the toilet to overflow. Atlantic further alleged that the specific defect occurred in a specific space: office space the FAA leased. Doc. 19-1 at 2. Photographs submitted with the Subrogation Letter reflect that access to the FAA facility was controlled. *Id.* at 12. These facts sufficiently notified the FAA that it should investigate whether an FAA employee, working in FAA work-space, who used a toilet provided for FAA employees leasing the space, negligently left the handle of the toilet in an open position.

Similarly, the facts Atlantic alleged were sufficient to place the FAA on notice that it should investigate whether there might have been a defect in the toilet (i.e., its handle tended to stay in an open position after being used) that it should have repaired or should have had someone else repair. Atlantic further alleged that the FAA facility contained "a few inches of water" for "several hours" after the toilet handle became stuck in the open position. *Id.* at 2. This allegation placed FAA on notice that it was negligent in not taking earlier action to stop the flooding caused by an overflowing toilet. Finally, the Subrogation Letter explained that the water intrusion damaged equipment directly below the source of the leak. *Id*. These facts do more than merely describe an accident like the *Stevens* claimant ineffectively did; they suggest potentially negligent conduct related to the operation, maintenance, or repair of the toilet and the damage caused by such negligence.

Said differently, the claimant in *Stevens* only identified an injury and the mechanism that injured him. He did not describe an apparently defective condition of the door and he did not provide any facts that might indicate negligence on the part of the Postal Service. Here, in contrast, Atlantic describes conditions its insured observed that indicate obvious defects—inches of water on the floor for several hours, a toilet overflowing, and a toilet handle stuck in the open position. Atlantic also describes facts under which the FAA might be negligent—that the handle of the toilet was stuck in an unnatural open position indicates that an FAA employee who used the toilet in the FAA space created that condition. And, no one addressed the issue of overflowing water even though inches of water had accumulated on the floor of the FAA space for several hours. In short, Atlantic filed a notice that identified a harm as well as a defective conditions of a toilet in FAA space, that FAA employees use, and that FAA arguably had a duty to ensure was not flooding its office space or anyone else's office space. Accordingly, the Court finds that Atlantic's Subrogation Letter provided sufficient notice for the FAA to investigate the possibility of particular, potentially tortious conduct. Atlantic therefore exhausted its administrative remedies as to its negligence claim for failure to operate, maintain, and/or repair. Dismissal of this claim is unwarranted.

    b.  <u>Atlantic failed to exhaust its claims for: (1) failure to retain contractors who would properly install, maintain, and/or repair the toilet; and (2) failure to properly train, supervise, and/or manage contractors, subcontractors, agents, servants, and employees in the proper use and operation of the toilet.</u>

The operative complaint also alleges negligence claims for failure to retain contractors who would properly install, maintain, and/or repair the toilet and failure to properly train, supervise, and/or manage contractors, subcontractors, agents, servants, and employees in the proper use and operation of the toilet. Doc. 8 at 4, ¶ 21(b)-(c). As noted above, Atlantic's Subrogation Letter placed the FAA on notice, among other things, that it should investigate

whether the toilet in its space tended to get stuck in the open position and so should have been repaired. Thus, to the extent Atlantic is alleging that the FAA should have had someone repair a defective condition that caused the toilet handle to get stuck in an open position, this failure-to-repair claim is the same as the above failure-to-repair claim the Court has already held Atlantic exhausted. However, to the extent Atlantic is claiming the FAA was negligent in not retaining a contractor to conduct regular maintenance checks and repairs of its toilets, Atlantic failed to exhaust such a claim. Similarly, Atlantic failed to exhaust a claim that the FAA was negligent in retaining the contractor who installed the toilet in the office space the FAA leased.

Atlantic's Subrogation Letter does not make any reference to contractors, subcontractors, agents, servants, or any culpable actor other than the FAA itself. Had Atlantic intended to pursue those claims, some indication that another entity subject to the FAA's control was involved was necessary. As written, nothing in the Subrogation Letter would have placed the FAA on notice that it should investigate potential claims involving negligent retention or supervision of non-employees. *See Staggs*, 425 F.3d at 884 (adopting *Trentadue*'s test asking whether a claim's language "serves due notice [the] agency should investigate the possibility of particular (potentially tortious) conduct").

Nor did Atlantic's Subrogation Letter place the FAA on notice that it should have investigated whether it had properly trained employees in the proper use and operation of the toilet. Indisputably, the list of mechanical devices about which employees should be trained before using is long. But a standard American toilet is not on the list of mechanical devices that obviously require training.[8] Atlantic's Subrogation Letter notified the FAA of the nature of the

---

[8] Indeed, there are no allegations in this case that the design of this toilet was uncommon or particularly high-tech.

toilet's defect, that it caused the toilet to overflow, and the resulting overflow damaged its insured's equipment. It did not, however, notify the FAA that it should investigate whether toilet users had received training on how to operate the toilet. Nor would the need for such an investigation have been implied based on the facts Atlantic provided.

Atlantic's negligent-retention and negligent-supervision claims resemble those in *Stevens*. There, the claimant's notice provided only minimal information to the Postal Service, but the ensuing lawsuit alleged numerous negligence theories, including failure to maintain safe premises, failure to inspect, and failure to warn of a dangerous condition. *Stevens*, 2019 WL 1386732, at *2. Judge Johnson held that the claimant failed to exhaust his administrative remedies because the federal complaint alleged "a markedly—and far broader—picture" than the administrative claim. *Id*. at *4 (quotation omitted).

The same is true here. The Subrogation Letter described an overflowing toilet due to a handle stuck in the open position and resulting property damage. *See* Doc. 19-1. Such allegations hint only at possible negligent conduct of an FAA employee who used the toilet, who did not take action to repair the toilet, or who did not take action to stop the overflowing toilet from overflowing. Even liberally construed, such allegations do not suggest the FAA, which leased the space, should investigate whether a contractor negligently repaired or installed the toilet, or whether the FAA inadequately trained or supervised contractors or employees. *See Benally*, 735 F. App'x at 485 (noting courts should liberally construe the universe of facts contained in an administrative claim). Atlantic's negligent-retention and negligent-supervision claims therefore exceed the scope of the administrative claim. Accordingly, Atlantic—like the claimant in *Stevens*—failed to exhaust these claims, and they must be dismissed. *Stevens*, 2019 WL

1386732, at *4; *see also McNeil*, 508 U.S. at 113 (holding that claimants are barred from bringing suit in federal court until they exhaust their administrative remedies).

Atlantic's general arguments in opposition to the United States' motion to dismiss fail to convince the Court that it provided adequate notice as to its negligent-retention and negligent-supervision claims in paragraphs 21(b) and (c) of the operative complaint. For instance, Atlantic argues that notice was sufficient because the FAA actually investigated Atlantic's administrative claim without requesting supplemental information from Atlantic. Specifically, Atlantic contends:

> [C]ommunications between Plaintiff and the FAA reveal that the FAA requested supplemental information from Plaintiff regarding its damages and insurance policy, which Plaintiff provided. Plaintiff also offered to provide additional information needed, but the FAA replied that it had everything necessary to review the claim. [] The communications between Plaintiff and the FAA underscore that: (1) the government had every opportunity to investigate this claim; (2) [the] government affirmatively investigated this claim; and (3) that the government failed to settle this claim before the statute of limitations ran.

Doc. 18 at 7-8. The United States does not dispute that it conducted some investigation related to the overflowing toilet.

However, that the FAA might have conducted a general investigation into Atlantic's claim that overflowing toilet water damaged its insured's equipment does not mean the FAA specifically investigated whether it negligently trained or negligently supervised toilet users, repairers, or installers. Indeed, Atlantic makes no argument that the FAA conducted such investigations.

Even if the FAA did conduct such an investigation, binding Tenth Circuit precedent makes clear that a claimant must exhaust their administrative remedies by providing facts sufficient to place an agency on notice that it should investigate the possibility of particular, potentially tortious conduct. *Staggs*, 425 F.3d at 884. Without this notice, a claimant cannot

successfully pursue their claim in court. *Id.* Atlantic cites no authority for its contrary

proposition—that an agency's investigation alone satisfies the FTCA's notice requirements. As

such, Atlantic's general argument that the FCC investigated does not allow Atlantic's negligent-

retention and negligent-supervision theories to proceed.

Next, Atlantic generally argues that it was "impossible for Plaintiff to make its notice of

claim any more specific than what was submitted or to supplement same" because the FAA

failed to respond to Atlantic's September 11, 2023, FOIA request. Doc. 18-1 at 1-2, ¶¶ 2, 5.

Under FOIA, Atlantic requested:

> 1) All emails, letters, or other records concerning maintenance requests for toilets
> from June 1, 2018 - June 1, 2023; 2) All emails, letters, or other records
> concerning repairs to toilets from June 1, 2018 - June 1, 2023; 3) All emails,
> letters, or other records concerning the toilet leak that occurred on or about June
> 1, 2023; 4) All emails, letters, or other records concerning maintenance requests
> for toilets from June 1, 2023 - September 11, 2023; 5) All emails, letters, or other
> records concerning repairs to toilets from June 1, 2023 - September 11, 2023; 6)
> All internal records and notes concerning leaky toilets in the building from June 1,
> 2018 September 11, 2023; 7) A copy of the FAA lease with the building landlord
> in effect on June 1, 2023.

Doc. 18-2 at 4.

This FOIA request did seek information to support Atlantic's negligent-retention and

negligent-supervision theories. And the Court is sympathetic to the difficulty of presenting facts

in support of a legal theory when the party to be sued, not the claimant, is in possession of the

information sought. Even though Atlantic apparently had not received the FOIA information

requested at the time of this lawsuit, however, Atlantic was able to file a complaint it contends

contains factual allegations sufficient to support its negligent-retention and negligent-supervision

claims. Atlantic does not explain how it was able to include these claims in its complaint but not

in its Subrogation Letter.

More significantly, *Lopez* appears to foreclose Atlantic's argument. Recall that the plaintiff there did not receive the evidence that supported his negligent credentialing claim until he conducted discovery in his lawsuit. 823 F.3d at 973. Consequently, mid-lawsuit, the district court characterized the plaintiff's negligent credentialing claim as a new claim that need not have been earlier exhausted. *Id*. at 975. On appeal, however, the Tenth Circuit disagreed and concluded, "that the facts alleged in Lopez's administrative claim were not sufficient to encompass and give the government notice of his negligent credentialing and privileging claim." *Id*. at 976. Under *Lopez*, the relevant inquiry is what information Atlantic provided in its Subrogation Letter, not the information Atlantic speculates it could have provided had it received the materials sought via its FOIA request.[9] Because Atlantic's Subrogation Letter did not provide the FAA with sufficient notice of its negligent-retention and negligent-supervision claims, Atlantic did not administratively exhaust them. Therefore, this Court lacks subject matter jurisdiction and must dismiss those claims.

### 2. Count II: Atlantic's Tresspass Claims

    a.  <u>Atlantic's Subrogation Letter sufficiently put the FAA on notice of its trespass claim.</u>

The United States also disputes whether Atlantic's Subrogation Letter provided sufficient facts and circumstances to put the United States on notice of its second claim: trespass. Under the Tort Claims Act, because the alleged tortious act or omission occurred in New Mexico, the

---

[9] The preservation request Atlantic included in its Subrogation Letter also did nothing to notify the FAA of Atlantic's negligent-retention and negligent-supervision theories. Atlantic's Subrogation Letter demands that the FAA "take all reasonable measures to protect, preserve, retain and halt destruction of any document or electronically stored information ("ESI") pertinent to, inter alia, the above-described loss locations, [toilet], and water intrusion." Doc. 19-1 at 3. Yet the Subrogation Letter contains no indication that Atlantic should protect, preserve, retain and halt destruction of any documents related to the retention, training, supervision, or management, of the FAA's contractors, subcontractors, agents, servants, and/or employees in the proper use, operation, or repair of the toilet. *See id.*

Court must look to New Mexico law for its definition of trespass. *See* 28 U.S.C. § 1346(b)(1); *Staggs*, 425 F.3d at 884 n.3. This is not as easy as it sounds. The parties champion different analytical frameworks for trespass in New Mexico. Atlantic claims it "was only required to allege that Defendant entered upon Plaintiff's property without authorization and failed to remove from Plaintiff's property something that it had a duty to remove." Doc. 18 at 9 (citing *Holcomb v. Rodriguez*, 2016-NMCA-075, ¶ 12, 387 P.3d 286, 291). The United States, however, citing a District of New Mexico decision by Judge James Browning, asserts that the New Mexico Supreme Court has not defined trespass under state law. Doc. 16 at 4 n.5 (citing *Dolan v. Fed. Emergency Mgmt. Agency*, 760 F. Supp. 3d 1200, 1247 (D.N.M. 2024)). In the absence of controlling authority, the United States continues, New Mexico case law directs this Court to look to the Second Restatement of Torts for the appropriate analytical framework. Doc. 16 at 4 n.5. Under the Second Restatement, the United States contends, Atlantic must show negligence for unintentional, non-hazardous conduct such as Atlantic alleges. *Id.*

At this stage of the case, the Court need not resolve which trespass standard applies. For the reasons explained above, Atlantic's Subrogation Letter provided sufficient notice of FAA negligence. Thus, even under the standard the United States champions, the Subrogation Letter fairly suggests a possible trespass claim. *See Lopez*, 823 F.3d at 976 (explaining that a claim encompasses causes of action fairly suggested by the underlying facts).

The Subrogation Letter identified the "Cause of the Loss" as "Water Intrusion from [the] FAA Tenant Above" and stated that Tau observed "a few inches of water" on the FAA's floor that "continued to intrude down into [Tau]'s Leased Premises for several hours." Doc. 19-1 at 2-3. This Subrogation Letter asserted that this water leak resulted from a toilet handle that was stuck

in the open position. *Id.* at 2. The Subrogation Letter also described the resulting damage to Tau's equipment and the payment sought from the FAA "as a result of the water intrusion." *Id.*

These allegations were sufficient to alert the FAA to investigate both: (1) whether it negligently allowed water to enter Tau's leased premises, and (2) whether water originating from the FAA's facilities entered Tau's premises and was not removed. Accordingly, the facts and circumstances described in the Subrogation Letter were enough to raise the possibility of a trespass claim under either parties' suggested standard—i.e. Atlantic's standard, which requires only intrusion and failure to remove, or the United States' standard, which requires negligence. *Staggs*, 425 F.3d at 884. Atlantic therefore provided adequate notice of its trespass claim in the Subrogation Letter, and the Court will not dismiss it for failure to administratively exhaust.

## CONCLUSION

For these reasons, the United States' Motion to Dismiss (Doc. 16) is **GRANTED IN PART** and **DENIED IN PART** as follows:

- The negligence claim in the operative complaint, Doc. 8 at 4, ¶ 21(b), for failure "to retain contractors that would properly install, maintain and/or repair the [toilet]" is **DISMISSED WITHOUT PREJUDICE**;

- The negligence claim in the operative complaint, Doc. 8 at 4, ¶ 21(c), for failure "to properly train, supervise and/or manage its contractors, subcontractors, agents, servants and/or employees in the proper use and operation of the [toilet]" is **DISMISSED WITHOUT PREJUDICE**; and

- The motion to dismiss is denied as to all other claims.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE